2021 IL App (3d) 170337

Opinion filed January 7, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-17-0337 |
| | ) | Circuit No. 12-CF-2380 |
| | ) | |
| AMRUT P. PATEL, | ) | Honorable |
| | ) | Daniel L. Kennedy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Daugherity concurred in the judgment and opinion.

**OPINION**

¶ 1    In November 2014, the defendant, Amrut P. Patel, pleaded guilty to one count of aggravated criminal sexual abuse of a minor (720 ILCS 5/11-1.60(d) (West 2012)). The circuit court sentenced him to 48 months of sex offender probation and certified him as a child sex offender. In November 2016, Patel filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)), seeking vacatur of his guilty plea on the basis of newly discovered evidence that demonstrated his innocence. The State filed a motion to dismiss pursuant to section 2-615 of the Code (*id.* § 2-615), which the circuit

court granted. Patel appeals.

¶ 2                                    I. BACKGROUND

¶ 3          On October 25, 2012, the State charged Patel by indictment with two counts of aggravated criminal sexual abuse of a minor. Count I alleged that, on or about June 4, 2012, he committed an act of sexual penetration with Pat Doe, who was over 13 years of age but under 17 years of age, in that he placed his penis on Pat Doe's mouth and he was at least 5 years older than her (720 ILCS 5/11-1.60(d) (West 2012)). Count II alleged that, on or about June 4, 2012, he committed an act of sexual penetration with Pat Doe, who was over 13 years of age but under 17 years of age, in that he placed his hand on Pat Doe's breast for the purpose of his sexual arousal, and he was at least 5 years older than her (*id.*).

¶ 4          On November 26, 2014, defense counsel informed the circuit court that Patel wished to plead guilty to count I, and in exchange, the State would dismiss count II. Patel signed a form titled "Plea of Guilty" that stated he waived his right to trial, confront and cross-examine witnesses, and not incriminate himself and that he subjected himself to the penalty imposed by the court—all freely and voluntarily. The court admonished the same in open court. The State provided the following factual basis for the guilty plea:

               "Your Honor, if called to testify, witnesses would testify that on the date of June 4, 2012, location at the Star Inn on West Jefferson, Joliet, Will County, Illinois, police arrived and spoke to Pat Doe who was a 16-year-old minor at the time who reported that she had been inappropriately touched by the manager of that establishment.

               The defendant, Mr. Patel, she stated that afterwards he had put $50 in her bra. She gave that money to the officers. She indicated to the officers that at one

point the defendant shut the door to the room she was in, put her on the bed, exposed his penis and tried to put his penis in her mouth with his penis touching her lips. And at the time the defendant was *** more than five years older than her."

Patel stipulated that "that's what the evidence would be." The court accepted Patel's guilty plea and sentenced him to 48 months of sex offender probation (including no contact with Pat Doe) and certified him as a child sex offender, which required him to comply with the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2014)) for life.

¶ 5        On November 23, 2016, just under two years from the entry of his guilty plea, Patel filed a section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2016)). He attached a notarized letter from Pat Doe, now self-identified as Justice Bales, that was dated September 22, 2016, which provided:

"My name is Justice C. Bales and I would like to clear my conscience. I accused Mr. Patel of the Star Inn motel of something he did not do. I would like to now set the record straight because my heart is in pain as a result of a false accusations. I stayed at Star Inn for (2012) approximately 8 months with my aunt and her kids. Mr. Patel was kind to us. When we didn't have the rent on time—he would give us time, even a few days to pay the rent.

As I said I stayed with my aunt and babysat her 4 kids while she worked. I needed a reliable phone in case I had to call my aunt. My (pay as you go) phone went out of service due to non-payment. I went to Mr. Patel and explained my situation asking him to please loan me $50 to have my cell [phone] turned back on. Mr. Patel knew our situation and was kind enough to loan it to me knowing I would pay him back within a few days.

3

My aunt was struggling to keep up with the bills/rent so when she found out that Mr. Patel gave me $50 in exchange for sex[1] she told me to say that if he gave me $50 I must do something in return. So to help us get out of the note I must say he sexually attacked me so that underage girl believed we could sue Star Inn and make a lot of money to afford an apartment of our own. I went along with her plan stating he 'groped me & exposed his genitals.' At this time, I did not call the police because he never put a hand on me. I spent 3 hours with my aunt putting together a plan. This occurred on June 6th.

Mr. Patel & Family[:]

I am writing to inform you that I have written a letter to the States Attorneys Office to clear my conscience as I have a lot of guilty feelings for the false accusations I made against you.

As you know we were struggling to pay our motel rent. You were good to me, my aunt and her children. As you know I had to babysit my aunt['s] kids. I needed to have a cell phone in case of any reason I had to call my aunt.

I asked you to please loan me $50 to have my cell phone turned back on. I told my aunt that you loaned me the $50 and with that she came up with the plan to sue Star Inn so we could get our own apartment. Since I was underage she told me to say that if you gave me $50 that I must tell the police that you wanted sex in exchange for the $50. I did not call the police right away because you never laid a hand on me. My aunt said to call and tell the police you sexually assaulted me so

---

[1] Bales clarified during her deposition testimony that Patel did not give her $50 in exchange for sex. Instead, that was what her aunt had told her to say. She stated, as she later clarified in her letter, that Patel gave her the $50 as a loan so that she could have her cell phone service restored.

that as an underage girl I/we could sue Starr Inn and get a lot of money. I was afraid of not having any where to live so I went along with that what my aunt told me."

¶ 6 The petition detailed that, in November 2013, Bales sued Patel and his employer for battery, negligent infliction of emotional distress, and a violation of the Gender Violence Act (740 ILCS 82/1 *et seq.* (West 2012)). The lawsuit settled for an unknown amount. Patel's petition also included Bales's deposition that was taken on November 22, 2016, where she reiterated the statements made in her letter, added that no one asked her to write the letter, and stated that she feared prosecution for perjury for her false accusations. Patel also attached the deposition testimony of Kimberly Berg, who testified that she lived at the Star Inn at the time of Bales's accusations. Around May 2016, Bales approached her and told her that Patel never laid a hand on her and explained why she made the accusations. Berg stated that Bales came forward on her own accord due to a guilty conscience, and Patel never spoke to her because he was on probation and afraid. She also detailed that she was with Bales when she wrote the letter and Bales feared that she would be prosecuted for perjury and go to jail for her false accusations.

¶ 7 Patel argued that Bales's recantation constituted newly discovered evidence, and had it been available at the time of judgment, it would have precluded the court from accepting his guilty plea. Patel requested to present his newly discovered facts as a defense to the charges in a trial on the merits. He argued that Bales's statements were material, discovered since his guilty plea proceedings, and could not have been discovered despite his due diligence.

¶ 8 On January 17, 2017, the State filed a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2016)).[2] The State argued that Patel's petition failed to state a cause of action and was

---

[2]The State's motion was entitled "Motion to Dismiss Section 2-1401 Petition Under 735 ILCS 5/2-615, and 735 ILCS 5/2-619." However, the motion did not argue a basis to dismiss Patel's petition on

5

insufficient as a matter of law. The State contended that Patel's guilty plea waived all nonjurisdictional errors and, alternatively, Bales's recantation was not newly discovered evidence. The court granted the State's motion without explanation. Patel appeals.

¶ 9                                    II. ANALYSIS

¶ 10        On appeal, Patel argues that the court erred when it granted the State's section 2-615 motion to dismiss his section 2-1401 petition. The State argues the court's ruling was proper.

¶ 11        A motion to dismiss brought pursuant to section 2-615 of the Code attacks the legal sufficiency of the petition. In essence, the respondent is saying, "So what? The facts the [petitioner] has pleaded do not state a cause of action ***." (Internal quotation marks omitted.) *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008). When ruling on these motions, the court must accept as true all well-pleaded facts in the petition, as well as any reasonable inferences that may arise from those facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. A petition should be dismissed under section 2-615 only if it is clearly apparent from the petition that no set of facts can be proved that would entitle the petitioner to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We review the circuit court's granting of a section 2-615 motion to dismiss *de novo*. *Grant v. State*, 2018 IL App (4th) 170920, ¶ 12. When applying the *de novo* standard of review, we use the record compiled in the circuit court but review the laws and facts without deference to the court's ruling. *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 12        Thus, we are tasked with deciding whether Patel properly stated a claim upon which relief could be granted in his section 2-1401 petition. Based on the case presented, our inquiry is two-fold. We must first address whether Patel can raise a claim of innocence on the basis of newly

---

section 2-619 grounds. At the hearing on the motion, the State clarified that the motion was incorrectly labeled and it only sought to dismiss the petition pursuant to section 2-615. Patel takes issue with this discrepancy on appeal, but it is clear from the record that this was a scrivener's error.

discovered evidence despite his knowing and voluntary guilty plea. If we answer this question affirmatively, then we must decide whether this evidence could entitle him to relief.

¶ 13    Our supreme court's recent decision in *People v. Reed*, 2020 IL 124940, is instructive. In *Reed*, the court addressed an issue of first impression: whether a defendant who pleads guilty waives any claim of actual innocence under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). *Reed*, 2020 IL 124940, ¶ 24.

¶ 14    The court considered the motives and consequences of a plea in light of a collateral attack on the basis of actual innocence. *Id.* Both the State and defendants benefit and make concessions in plea agreements. The State benefits from plea agreements in that they are often prompt and provide finality to most criminal cases, resulting in preservation of prosecutorial and judicial resources. *Id.* ¶ 25. These benefits motivate the State to make concessions, such as forgoing the opportunity to present the entirety of the evidence, dismissing charges, and ceasing investigation that may lead to additional charges. *Id.* On the other hand, defendants also incur substantial benefits as they can obtain a favorable sentence, dismiss other charges, and avoid the cost and time associated with trial. *Id.* ¶ 26. However, the consequences of a plea for defendants are severe as "[a] guilty plea is an admission of guilt and a conviction in and of itself." *Id.* ¶ 27. Therefore, a guilty plea functions as the evidence and verdict—thereby ending the controversy. *Id.* It relieves the State of its burden to prove a defendant guilty beyond a reasonable doubt, and by pleading guilty, a defendant " 'waives all nonjurisdictional defenses or defects,' including constitutional ones." *Id.* (quoting *People v. Burton*, 184 Ill. 2d 1, 27 (1998)).

¶ 15    The State recognized that a plea entails significant consequences for both parties but argued that allowing a defendant's claim of innocence would dissuade it from entering into future plea negotiations because it would be providing concessions without the benefit of finality. *Id.* ¶ 28. It

7

also emphasized that the defendant waived his right to a jury trial, to present defenses, and to proof beyond a reasonable doubt, which foreclosed the defendant's ability to assert a claim of innocence later. *Id.* The court disagreed with the State, noting that "our constitution affords additional due process when newly discovered evidence shows that a convicted person is actually innocent on the basis that '[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.' " *Id.* ¶ 29 (quoting Ill. Const. 1970, art. I, § 2). The court noted that these claims are separate and independent from sufficiency of the evidence challenges or claims that an error occurred in the circuit court proceedings that led to the conviction. *Id.* ¶¶ 29, 31. Therefore, a "defendant's waiver of his right to challenge the State's proof of guilt beyond a reasonable doubt at trial should not impact his actual innocence claim." *Id.* ¶ 31.

¶ 16 The court noted that, although plea agreements are vital to our criminal justice system, they are not structured to shield the innocent or provide any factual validity of the conviction. *Id.* ¶ 33. Instead, the very nature of a plea system positions the defendant in a cost-benefit analysis where, after assessing the State's evidence of guilt versus the evidence for his defense, he may choose to plead guilty in hopes for a more lenient punishment. *Id.* In fact, it is well accepted that a defendant's decision to plead guilty may be based on factors unrelated to his guilt. *Id.* Recent empirical data related to exonerations further demonstrate that innocent people do plead guilty. *Id.* ("18% of all exonerees and 11% of those exonerated through DNA pled guilty"). Nonetheless, the structure of our criminal justice system allows a court to accept a guilty plea even where a defendant asserts his innocence, as long as the State provides a sufficient factual basis and the court provides the required admonishments. *Id.* ¶ 34. The factual basis required by the State only requires enough proof that a court could reasonably conclude that the defendant actually

8

committed the acts constituting the offense to which he is pleading guilty. *Id.* This is in stark contrast to the State's burden at trial where its evidence is scrutinized and must meet the beyond a reasonable doubt standard. *Id.* Thus, "pleas are no more foolproof than trials." *Id.* ¶ 35.

¶ 17     The court stated that, "[w]hen met with a truly persuasive demonstration of innocence, a conviction based on a voluntary and knowing plea is reduced to a legal fiction." *Id.* At this point, additional due process provided by the Illinois due process clause is triggered despite the defendant's waiver of all nonjurisdictional defects. *Id.* The court emphasized its long-standing preference for life and liberty over holding a defendant to his plea, noting that "sometimes a manifest injustice outweighs the consequences of [a] defendant's voluntary plea." *Id.* ¶ 36. The court concluded that a guilty plea is not guilt in fact and does not prevent a defendant from asserting his right to not be deprived of life and liberty given compelling evidence of actual innocence under the Act. *Id.* ¶¶ 37-38. The court provided the following standard to actual innocence claims involving defendants who plead guilty:

> "[A] successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal. New means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence. [*People v. Coleman*, 2013 IL 113307, ¶ 96.] This is a comprehensive approach where the court must determine whether the new evidence places the evidence presented in the underlying proceedings in a different light and 'undercuts the court's confidence in the factual correctness' of the conviction. *Id.* ¶ 97.

> This higher standard strikes an equitable balance between the defendant's

constitutional liberty interest in remaining free of undeserved punishment and the State's interest in maintaining the finality and certainty of plea agreements, while vindicating the purpose of the criminal justice system to punish only the guilty. Because the evidence must be clear and convincing, the standard inherently requires the court to consider the evidence to be reliable. We therefore see no reason to further limit defendants who plead guilty by requiring them to support their petition with forensic evidence." *Reed*, 2020 IL 124940, ¶¶ 49-50.

¶ 18      Based on the foregoing, we find that Patel can raise a claim of innocence on the basis of newly discovered evidence despite his knowing and voluntary guilty plea. As the supreme court noted in *Reed*, "sometimes a manifest injustice outweighs the consequences of [a] defendant's voluntary plea." *Id.* ¶ 36. We acknowledge that Patel filed a section 2-1401 petition instead of a petition under the Act, but we find that difference immaterial based on the facts before us. His section 2-1401 petition "is a request for the additional due process that is triggered by new and compelling evidence demonstrating [his] innocence." *Id.* ¶ 40. Even the State argues that this court should apply case law arising from postconviction petitions under the Act to Patel's section 2-1401 petition because it is "a distinction without a difference" and our analysis "should not change based on the forum under which such a claim is raised." Thus, expanding the reasoning in *Reed* to Patel's claim of innocence in his section 2-1401 petition follows logic, is in the spirt of the rationale in *Reed*, and is a substance-over-form approach.

¶ 19      Now that we have decided that this is a viable claim, we must determine whether the evidence offered by Patel could entitle him to relief. Section 2-1401 of the Code provides a statutory procedure permitting vacatur of final judgments and orders after 30 days, but no more than two years, from their entry. 735 ILCS 5/2-1401 (West 2016). A proceeding under section 2-

10

1401 is a forum in which "to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and court at the time of trial, which, if then known, would have prevented the judgment." (Internal quotation marks omitted.) *People v. Berland*, 74 Ill. 2d 286, 314 (1978). Perjured testimony may form the basis for a section 2-1401 petition. *People v. Burrows*, 172 Ill. 2d 169, 180 (1996). However, the petitioner must (1) present evidence that was not available at the time of trial that the petitioner could not have discovered sooner through the exercise of due diligence and (2) the evidence offered by the petitioner must be of such convincing character that it would likely change the outcome of the trial. *Id.* It is obvious that this rule was created in the context of a finding of guilt following a trial. In light of *Reed*, we interpret this rule in cases involving a guilty plea and claims of innocence to mean the petitioner must provide "new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *Reed*, 2020 IL 124940, ¶ 49.

¶ 20    Here, Patel provided Bales's letter and evidence deposition wherein she recanted her prior allegation of sexual abuse. The State argues that this evidence cannot support Patel's claim because this evidence is not "newly discovered." Specifically, it argues that Patel would have known that these statements were untrue at the time of his plea.

¶ 21    According to *Reed*, "[n]ew means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence." *Id.* It is clear that this evidence is new as the earliest piece of evidence offered by Patel was dated September 22, 2016, nearly two years after his guilty plea was entered. Further, the evidence arose after the plea and could not have been discovered earlier through the exercise of due diligence. The suggestion that Patel knew Bales's accusations were untrue at the time he made his plea and that precludes him from raising the letter and evidence deposition as new evidence is

11

unconvincing. Patel had no evidence available to dispute the accusation at the time of his plea. In fact, Bales's accusation and the $50 she gave to the police was the only evidence in this case, and the State had over two years between Bales's accusation and the entry of Patel's guilty plea and produced no additional evidence to support the plea. From Patel's perspective, Bales's accusation shifted the burden of proof to him to disprove her claims and any failure to do so affirmed her accusation. He had no reason to believe that she would not persist in her statements that she made to law enforcement, to a grand jury, and in a complaint for a civil lawsuit against him and his employer. Moreover, it is unadvisable that Patel, either with pending charges or on probation with a no contact order, approach his accuser to obtain a recantation for allegations he knows are untrue. Among many other issues, it would raise concern over whether the recantation was the product of coercion. Thus, this evidence is appropriate to support Patel's claim.

¶ 22 For the foregoing reasons, Patel properly stated a claim upon which relief could be granted. We reverse the circuit court's granting of the State's motion to dismiss and remand for further proceedings, including a hearing on Patel's section 2-1401 petition. We instruct the court on remand to consider whether the new evidence presented is material, noncumulative, and clearly and convincingly demonstrates that a trial would probably result in acquittal. See *id.* ¶¶ 49-50.

¶ 23 III. CONCLUSION

¶ 24 The judgment of the circuit court of Will County is reversed and remanded with directions.

¶ 25 Reversed and remanded with directions.

**No. 3-17-0337**

| | |
|---|---|
| **Cite as:** | *People v. Patel*, 2021 IL App (3d) 170337 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 12-CF-2380; the Hon. Daniel L. Kennedy, Judge, presiding. |
| **Attorneys for Appellant:** | Colin Quinn Commito, Brian Culley Walker, and Gordon H. Hirsch, all of Joliet, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |