2022 IL App (1st) 191101-B

No. 1-19-1101

Second Division
March 31, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 10 CR 1910 |
| v. | ) | |
| | ) | |
| SHAMAR GRIFFIN, | ) | Honorable |
| | ) | Michael B. McHale |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    On June 16, 2011, defendant-appellant Shamar Griffin pled guilty to one count of first degree murder and was sentenced to 35 years' imprisonment. On February 4, 2019, defendant filed a motion for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which advanced claims of ineffective assistance of counsel and actual innocence supported by affidavits from himself, Lavonte Moore, and Perrier Myles. The circuit court denied leave to file the successive postconviction petition. Defendant now appeals, arguing that (1) the court incorrectly held that he was not permitted to

pursue a claim of actual innocence after entering a guilty plea and he had set forth a colorable claim of actual innocence and (2) he demonstrated both cause and prejudice for his claim of ineffective assistance of counsel. For the following reasons, we reverse and remand for further proceedings under the Act.

¶ 2                                      I. BACKGROUND

¶ 3     Defendant was charged with 29 counts related to two shootings that occurred on June 26, 2009. For the shooting death of Milissa Williams, he was charged with 24 counts of first degree murder. For the shooting of Otis Houston, he was charged with four counts of attempted first degree murder and one count of aggravated battery with a firearm. Assistant Public Defender (APD) Robert Strunck represented defendant throughout the proceedings. On March 23, 2011, APD Strunck reported to the court that he had negotiated with the State and had tendered the State's offer to defendant.

¶ 4     On May 10, 2011, defendant requested the circuit court to appoint new counsel, stating that APD Strunck was "ineffective" and had only visited him once during the 18 months he had been in jail. APD Strunck responded that he had spent multiple hours at the jail with defendant and had spoken to him on the phone on multiple occasions. APD Strunck had also informed defendant that it was a very difficult case and explained that defendant could review the police reports in APD Strunck's presence later that week. The court determined that there was nothing to indicate that APD Strunck could not continue to effectively represent defendant. The court further explained to defendant that it did not have the ability to assign a different public defender and that defendant's only other option was to hire private counsel.

¶ 5     On June 16, 2011, defendant accepted the State's offer to plead guilty to one count of first degree murder in exchange for a 35-year prison term. At the time defendant entered the plea, he

acknowledged that he was giving up his right to trial and his right to a presentence investigation report and that no one had threatened him or promised him anything in exchange for the plea. He signed a written waiver form stating the same.

¶ 6    The State presented the factual basis for defendant's plea as follows.

¶ 7    Lavertice Harmon provided a statement that he was playing dice on North LeClaire Avenue in Chicago with Leroy Battle, Kevin Barnes, and others around 3 a.m. when defendant arrived in a dark-colored vehicle with its headlights off. Defendant, who was armed with a handgun, told Harmon that the car was stolen, that Williams had stabbed defendant in the past, and that he was "fixin' to merk that b***," which Harmon knew meant to kill Williams. Harmon asked defendant to wait so that he could get his friends out of the area, and defendant drove around the block. In the meantime, Harmon warned Williams and Houston. As Williams and Houston began walking toward LaFollette Park, defendant returned, got out of his car, and approached Williams. Harmon did not hear what defendant and Williams said to one another, but he did observe defendant fire a single shot at Williams and multiple shots at Houston. Defendant fired once more at Williams before getting back in his car and driving away.

¶ 8    Houston would testify that, at around 3:30 a.m. on June 26, 2009, defendant shot Williams twice near 5101 West Hirsch Street in Chicago, then chased him down and shot him four times, three times in the bicep and once in the right side of his chest. Houston would also testify that he identified defendant in a physical lineup.

¶ 9    The State also submitted the grand jury testimony of Barnes and Battle, who both identified defendant as the shooter. Further, the State submitted the grand jury testimony of Carlton Winters, who testified that defendant admitted to the shooting in a phone conversation.[1]

¶ 10   Though not part of the State's factual basis, defendant's confession to the police on December 22, 2009, is relevant to the disposition of this appeal, and thus we summarize that statement, as it is found in the police report, which is in the record on appeal. Defendant stated that he was stabbed by Williams in April 2009 and, on the day of the shooting, he was only trying to send her a message, not kill her. He admitted that he fired multiple shots at both Williams and Houston, though he claimed he did not know their names prior to the shooting.

¶ 11   The circuit court accepted defendant's plea and, in accordance with the negotiations, sentenced him to 35 years' imprisonment on June 16, 2011. The court advised defendant of his right to appeal and informed him that he would first have to file a motion to withdraw his guilty plea within 30 days.

¶ 12   Defendant did not file a timely motion to withdraw his plea. He filed a notice of appeal on August 31, 2011, which the circuit court denied. On November 16, 2011, this court allowed defendant's late notice of appeal. On September 6, 2012, we granted the parties' agreed motion for summary remand and directed the clerk of the circuit court to modify certain monetary assessments imposed against defendant. *People v. Griffin*, No. 1-11-3210 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 13   On September 17, 2017, defendant filed an initial *pro se* postconviction petition in which he claimed actual innocence based on his own affidavit and documents obtained through a

---

[1]None of the referenced grand jury testimony transcripts appear in the record on appeal.

Freedom of Information Act request. See 5 ILCS 140/1 *et seq.* (West 2016). In particular, defendant alleged that his inculpatory statement should have been suppressed because the police officers who arrested him in Atlanta, Georgia, did not have a warrant or probable cause. He also alleged mistreatment while in police custody and that for 30 hours he "was threatened and forced to confess." Finally, he claimed that his counsel was ineffective for failing to investigate his illegal arrest. The circuit court summarily dismissed the petition. On appeal to this court, defense counsel, appointed from the Office of the State Appellate Defender, filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This court granted the motion as "there [were] no issues of arguable merit to be pursued on appeal." *People v. Griffin*, No. 1-18-0490 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 14    On February 4, 2019, while his initial postconviction petition was still pending before this court, defendant sought leave to file the successive postconviction petition that is the subject of this appeal.

¶ 15    The successive petition first makes a claim of ineffective assistance of counsel, alleging that his trial counsel, APD Strunck, was ineffective for failing to investigate Butler as the actual shooter, which defendant instructed him to do "after 14 months" of awaiting his trial because he "was hearing around the jail that was the person who killed [Williams]."[2] Defendant stated that APD Strunck informed him that "since [he] confessed to the murder there is no defense that can help [him]," and defendant informed trial counsel that his confession was false and was the result of duress, psychological abuse, and mental coercion.

---

[2]We note that defendant does not identify the source of this information and now claims that he learned of Butler's involvement specifically from Moore and Myles in prison after he pled guilty.

¶ 16    The petition then sets forth a claim of actual innocence based on the newly discovered evidence contained in the affidavits of Moore and Myles, both of whom spoke with defendant in prison. In his petition, defendant alleged that he did not know about the information Moore and Myles had until he spoke with them in prison.

¶ 17    Moore averred that he witnessed the shootings while sitting in his parked car across from LaFollette Park. Moore stated that he observed Jerrell Butler emerge from an alley and walk past his car toward a group of people. As Butler passed Moore's car, he said "wassup," to Moore and then he pulled out a gun from his waistband. Moore heard five gunshots and saw Butler run past his car again. Moore never mentioned this to anyone before encountering defendant in prison in November 2018 because he was afraid of retaliation from Butler and Butler's friends.

¶ 18    Myles, who was incarcerated at the time of the shooting, averred that he was aware that his friends, Cornell McWilliams, Barnes, and Harmon witnessed the shooting and informed the police that defendant was the shooter. He further averred that after his release he spoke with McWilliams and was told that defendant was a scapegoat "so that [Harmon] and [Barnes's] drug business [could] continue without further pressure from Chicago police." McWilliams admitted to Myles that they did not see the shooter's face but said he was light-skinned with braids. This description confused Myles because he knew that defendant is dark-skinned with dreadlocks. According to Myles, McWilliams further stated that he, Harmon, and Barnes contacted the police to make false accounts identifying defendant as the shooter and that he later learned that Houston owed Butler money from drug sales and he believed that Butler was the actual shooter because Houston owed Butler a drug debt. Myles was incarcerated again, and on June 29, 2018, he informed defendant of the conversation with McWilliams.

¶ 19    Defendant's petition also contains a section titled "Newly Discovered Evidence of Police Misconduct" of Chicago police detectives John Folino and Tim McDermott and listed 11 lawsuits, which were attached to the petition. Defendant makes no arguments regarding the police misconduct lawsuits on appeal.

¶ 20    On April 5, 2019, the circuit court denied defendant's motion for leave to file his successive petition. Citing *People v. Simmons*, 388 Ill. App. 3d 599 (2009), the court stated that "petitioner cannot make a claim of actual innocence after a proper constitutionally compliant guilty plea." The court further noted that defendant did not include any allegations that he was coerced into the plea. The court made no reference to defendant's claim of ineffective assistance of counsel. This appeal followed.[3]

¶ 21                                                  II. ANALYSIS

¶ 22    On appeal, defendant first argues that his actual innocence claim is not barred by his guilty plea and that he has made a colorable claim of actual innocence based on newly discovered evidence in the form of affidavits demonstrating that Butler was the actual shooter and that two witnesses named in the factual basis for his plea provided false statements. Defendant also claims that the circuit court ignored his claim of ineffective assistance of counsel. Defendant argues that he established cause and prejudice for his ineffective assistance of counsel claim, which alleged counsel's failure to investigate whether Butler was the actual shooter before allowing defendant to enter a guilty plea. As such, defendant contends that this court should remand his petition for second stage proceedings.

---

[3]We previously issued a summary order dismissing this appeal for lack of jurisdiction. Pursuant to a supervisory order from the Illinois Supreme Court, the summary order was vacated, defendant's appeal was reinstated, and we now consider the appeal on the merits.

¶ 23                                    A. The Act

¶ 24    The Act provides a method for a criminal defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates the filing of only one petition without leave of court. *People v. Lusby*, 2020 IL 124046, ¶ 27. There are two bases upon which the bar against successive petitions will be relaxed: (1) where the petitioner can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding or (2) where the petitioner asserts a fundamental miscarriage of justice based on his actual innocence. *People v. Robinson*, 2020 IL 123849, ¶ 42. Because defendant has alleged both bases in his petition and on appeal, we will separately set forth the principles of law applicable to each type of postconviction claim. Nonetheless, under either basis at this stage, we must accept as true all well-pled allegations that are not positively rebutted by the record, and we may not make fact or credibility determinations. *Id.* ¶ 45. Our review of the denial of leave to file a successive petition is *de novo*. *Id.* ¶¶ 39-40.

¶ 25    We first address defendant's actual innocence claim.

¶ 26                                 B. Actual Innocence

¶ 27                          1. Freestanding Claim of Actual Innocence

¶ 28    As a preliminary matter, we must address the State's argument that defendant has not alleged a freestanding actual innocence claim. The State contends that the claim is not freestanding because it is based upon the same newly discovered evidence supporting defendant's claim of ineffective assistance of counsel.

¶ 29    The concept of freestanding actual innocence claims under the Act can be traced back to our supreme court's decision in *People v. Washington*, 171 Ill. 2d 475 (1996). There, the defendant,

who was convicted for murder, had submitted an affidavit (and later *in camera* testimony was heard) from an individual who identified the shooter as someone other than the defendant. *Id.* at 476-77. In his postconviction petition, the defendant alleged, *inter alia*, ineffective assistance of trial counsel and newly discovered evidence based on both the affidavit and testimony. *Id.* at 477-78. The question before the supreme court was whether the defendant could pursue a newly discovered evidence claim under the Act. *Id.* at 479-80. Though the court determined that a freestanding claim of innocence was not cognizable as a fourteenth amendment due process claim, it held that such claims were cognizable under the Act as a matter of due process afforded by the Illinois Constitution. *Id.* at 485-89. In so holding, the court noted that "to ignore such a claim would be fundamentally unfair" and "[i]mprisonment of the innocent would also be so conscience shocking as to trigger operation of substantive due process." *Id.* at 487-88.

¶ 30    Relying on *Washington*, our supreme court two years later in *People v. Hobley* defined a claim of actual innocence as freestanding where "the newly discovered evidence being relied upon 'is not being used to supplement an assertion of a constitutional violation with respect to [the] trial.' " 182 Ill. 2d 404, 443-44 (1998) (quoting *Washington*, 171 Ill. 2d at 479). Based on this, the court held that the defendant, who had been convicted of murder, arson, and aggravated arson, had not properly raised a freestanding claim of actual innocence because his new evidence, which was a fingerprint report and information regarding a second gasoline can, was also being used to establish a violation of his constitutional right to due process under *Brady*. *Id.* at 444.

¶ 31    Subsequently, in *People v. Orange*, 195 Ill. 2d 437 (2001), the court reiterated its holding in *Hobley*. In *Orange*, the court once again noted that a freestanding actual innocence claim cannot rely upon evidence " ' "used to supplement an assertion of a constitutional violation with respect to [the] trial." ' " *Id.* at 459 (quoting *Hobley*, 182 Ill. 2d at 444, quoting *Washington*, 171 Ill. 2d at

479). The court then found that the defendant's actual innocence claim was not permissible because he used the same documentation to support both his actual innocence claim and a claim that his trial was unconstitutional because his confession was involuntary. *Id.* at 459-60.

¶ 32    In several subsequent cases, the appellate court has relied upon the rule in *Hobley* in rejecting actual innocence claims in postconviction petitions. See, *e.g.*, *People v. Jackson*, 2018 IL App (1st) 171773, ¶ 71; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 29-30; *People v. English*, 403 Ill. App. 3d 121, 132-33 (2010). But see *People v. Martinez*, 2021 IL App (1st) 190490, ¶ 102 (although ultimately following supreme court precedent, this court critiqued the rule in *Hobley*, stating that the rule "deviated from both the spirit and the letter of the law as set forth in *Washington*"). The State additionally cites *People v. Zareski*, 2017 IL App (1st) 150836, for support. In *Zareski*, this court, in passing, referenced *Hobley* and stated that the defendant's appellate counsel could not have pursued both a claim that a newly discovered witness affidavit established actual innocence *and* that trial counsel was ineffective for failing to discover and investigate the witness. *Id.* ¶ 71.

¶ 33    In his reply brief, however, defendant contends that the supreme court made it clear in *People v. Coleman*, 2013 IL 113307, that "a petitioner who can state a freestanding claim of actual innocence *and* a deprivation of a constitutional right during the proceedings that resulted in his conviction is not required to choose which claim to pursue." (Emphasis in original.) Specifically, the court stated: "Where a defendant makes a claim of trial error, as well as a claim of actual innocence, in a successive postconviction petition, the former claim must meet the cause-and-prejudice standard, and the latter claim must meet the *Washington* standard." *Id.* ¶ 91. We acknowledge the court's comment in *Coleman* but reject any suggestion that by that comment the court overruled either *Hobley* or *Orange*. We read the court's comment as merely identifying the

applicable standard for the different types of claims. In point of fact, the court made no reference to *Hobley* or its apparent rule that the different claims may not rely on the same supporting documentation in order for the actual innocence claim to be freestanding. Thus, we reject defendant's interpretation of the court's comment.

¶ 34    Defendant further asserts that the State has misinterpreted the holdings in *Hobley* and *Orange*. According to defendant, the court determined in both *Hobley* and *Orange* that the newly discovered evidence "did not stand on its own" to support a due process violation. The defendant distinguishes the evidence in both of those cases from that presented in *Washington*, specifically that the defendant in *Washington* had witness affidavits corroborating the defendant's innocence, whereas the defendant in *Orange* had only evidence of police torture in obtaining evidence, and the defendant in *Hobley* had evidence of a fingerprint analysis and a second gasoline can that was later destroyed, as well as evidence of police torture. Although factually accurate, we disagree that the court in either *Hobley* or *Orange* based its conclusion on the nature or type of evidence presented. Instead, as we previously stated, the court's disposition was based on the fact that the same evidence was being used to support both the actual innocence claims and claims of constitutional error. The *Hobley* court created a rule that disallowed petitioners from using newly discovered evidence demonstrating actual innocence to also support alternative claims of constitutional trial error within the same postconviction petition.

¶ 35    Ultimately, this court is bound to follow supreme court precedent. We find, however, that because defendant's actual innocence claim is supported by evidence that is different than the evidence supporting his ineffective assistance of counsel claim, the rule espoused in *Hobley* is not violated. See *Martinez*, 2021 IL App (1st) 190490, ¶ 106 (concluding that *Hobley* did not preclude

the defendant's actual innocence claim, as it incorporated additional supporting documentation that was not applicable to the defendant's claims based on police misconduct and *Brady*).

¶ 36   Specifically, in his petition, defendant sets forth two arguments. His first argument is titled "Ineffective assistance of counsel for failure to investigate an individual name[d] Jerrell Butler who I was hearing around the jail that was the person who killed [Williams]." He references "psychological abuse" and "mental coercion" by the detectives, which resulted in his confession. He does not specifically cite any supporting documentation for this claim.

¶ 37   Defendant's second argument is titled, "Newly discovered evidence of actual innocence from affidavit of Lavonte Moore." He then sets forth the contents of Moore's affidavit. Next, there is a header stating "Supporting Affidavit from Perrier Myles" followed by the contents of that affidavit, and then a header stating "Newly discovered evidence of police misconduct of Det. John Folino and Tim McDermott," followed by a list of lawsuits filed against those detectives. The lawsuits, defendant's affidavit, and Myles's and Moore's affidavits are attached to his petition as exhibits.

¶ 38   Because defendant neither relies on nor references any of the exhibits supporting his ineffective assistance of counsel claim in support of his actual innocence claim, we find that the two claims are not based on the same documentation. Arguably either of defendant's two claims may be bolstered by evidence supporting the other. However, we cannot conclude that the two claims share the same evidentiary foundation. Moreover, any references to the supporting documentation on appeal are irrelevant, as the allegations in his petition control. Accordingly, we conclude that defendant's actual innocence claim is not violative of the *Hobley* rule and, therefore, constitutes a freestanding claim.

¶ 39                          2. Effect of Guilty Plea

¶ 40 Although our review is *de novo*, we recite the reasoning for the circuit court's denial, *i.e.* that a defendant who has entered a valid guilty plea cannot later pursue a claim of actual innocence. In so concluding, the circuit court relied on *Simmons*, 388 Ill. App. 3d 599, which was recently overruled by our supreme court in *People v. Reed*, 2020 IL 124940.

¶ 41 In *Reed*, the defendant, who pled guilty to armed violence, filed a motion for leave to file a successive postconviction petition alleging actual innocence accompanied by a supporting witness affidavit. 2020 IL 124940, ¶¶ 9-11. The petition advanced to a third stage evidentiary hearing, where testimony was heard from the witness. *Id.* ¶ 13. The circuit court denied the petition, finding that the evidence was not conclusive, and on appeal, this court affirmed the denial but did so because it found that a guilty plea forecloses a postconviction claim of actual innocence. *Id.* ¶¶ 14-15.

¶ 42 Our supreme court granted the defendant's petition for leave to appeal (*id.* ¶ 16) and was then confronted with an issue of first impression: whether a defendant who pleads guilty waives any claim of actual innocence under the Act (*id.* ¶ 24). The court answered the question in the negative. *Id.* ¶ 37.

¶ 43 In its analysis, the court first discussed the motives and consequences of plea agreements, from which both the State and the defendant benefit and make concessions. *Id.* ¶ 25. On the one hand, the State benefits by preserving resources through a prompt and final disposition of a criminal case, but in doing so, the State sacrifices the ability to investigate the case further, add or dismiss charges, and present the entirety of the evidence before the court. *Id.* On the other hand, the defendant benefits by obtaining a more favorable sentence, the dismissal of charges, and avoiding a trial that is often costly and involves protracted proceedings. *Id.* ¶ 26. However, the court noted that the concessions a defendant must make are severe, where a guilty plea is an

admission of guilt, and a defendant must waive certain rights, including "all nonjurisdictional defenses or defects." (Internal quotation marks omitted.) *Id.* ¶ 27.

¶ 44 The State argued that allowing guilty plea defendants to pursue actual innocence claims would discourage it from conducting plea negotiations in the future due to the lack of finality and that a defendant was foreclosed from pursuing an actual innocence claim based on his waiver of rights in entering a guilty plea. *Id.* ¶ 28. The court, however, disagreed with the State, noting that a "defendant's waiver of his right to challenge the State's proof of guilt beyond a reasonable doubt at trial should not impact his actual innocence claim." *Id.* ¶ 31. The court reasoned that actual innocence claims are separate and independent from challenges to the sufficiency of the evidence or claims that an error in the proceedings led to the conviction. *Id.* ¶¶ 29, 31.

¶ 45 Ultimately, the supreme court held that the defendant's guilty plea did "not prevent him from asserting his right to not be deprived of life and liberty given compelling evidence of actual innocence under the Act." *Id.* ¶ 37. In so ruling, the court explained that a guilty plea does not guarantee factual validity of a conviction and "is no more foolproof than full trials," where (1) "the decision to plead guilty may be based on factors that have nothing to do with defendant's guilt" such as the hope for a more lenient sentence, (2) a defendant may continue to assert his innocence despite his plea, and (3) the State's factual basis for the plea is held to a less stringent level of proof than at trial. (Internal quotation marks omitted.) *Id.* ¶¶ 33-35. Thus, when a trial court is "met with a truly persuasive demonstration of innocence, a conviction based on a voluntary and knowing plea is reduced to a legal fiction," and additional due process is triggered despite the defendant's waiver of all nonjurisdictional defects. *Id.* ¶ 35.

¶ 46 Accordingly, pursuant to *Reed*, defendant here is permitted to raise a claim of actual innocence based on newly discovered evidence notwithstanding his guilty plea.

¶ 47                             3. Leave-To-File Stage Standard

¶ 48    Prior to addressing defendant's actual innocence claim, we must first determine the appropriate standard governing our review, which the parties dispute on appeal. Currently, the preeminent case on the appropriate standard of review for actual innocence claims in successive postconviction petitions at the leave-to-file stage is *Robinson*, 2020 IL 123849. There, our supreme court stated that the standard at the leave-to-file stage is higher than that applicable to the first stage of an initial petition, which merely requires that the petition not be frivolous or patently without merit. *Id.* ¶ 43. The supreme court, relying upon the well-established caselaw regarding successive postconviction petitions and actual innocence claims, set forth the following principles of law:

> "A request for leave to file a successive petition should be denied only where it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence. [Citation.] Accordingly, leave of court should be granted where the petitioner's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. [Citation.]
>
> At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true. [Citations]. In deciding the legal sufficiency of a postconviction petition, the court is precluded from making factual and credibility determinations. [Citations.]
>
> ***

To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Id.* ¶¶ 44-47.

¶ 49    The parties debate in their briefs whether the prevailing standard set forth in *Robinson* should apply or the standard espoused in *Reed*. In *Reed*, after determining that guilty plea petitioners could pursue actual innocence claims, the majority identified the applicable standard of review for evaluating such claims following a third stage evidentiary hearing. "[A] successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that *clearly and convincingly* demonstrates that a trial would probably result in acquittal." (Emphasis added.) *Reed*, 2020 IL 124940, ¶ 49. The court also stated that it must be determined "whether the new evidence places the evidence presented in the underlying proceedings in a different light and 'undercuts the court's confidence in the factual correctness' of the conviction." *Id.* (quoting *Coleman*, 2013 IL 113307, ¶ 97). This higher standard, the court noted, struck a balance between "the defendant's constitutional liberty interest in remaining free of undeserved punishment and the State's interest in maintaining the finality and certainty of plea agreements." *Id.* ¶ 50. Finally, the court addressed its new "clear and convincing" standard, stating that the standard inherently requires that the court find the evidence to be reliable. *Id.* In a footnote, the court recognized that a finding that the evidence is reliable would only be made at the third stage because "all well-pled facts must be taken as true at the motion to dismiss stage." *Id.* ¶ 50 n.2 (citing *People v. Sanders*, 2016 IL 118123, ¶ 42).

¶ 50    Both parties cite Justice Michael J. Burke's special concurrence in *Reed* for support of their respective positions: defendant for Justice Burke's acknowledgement that the majority failed to address the other stages of postconviction review and the State for Justice Burke's suggestion of a

higher standard than *Robinson* at the leave-to-file stage. We note in passing that Justice Burke dissented from the majority's opinion in *Robinson* and stated in his *Reed* concurrence that the *Robinson* standard was "so vague as to be virtually meaningless." *Reed*, 2020 IL 124940, ¶ 65 (Burke, J., specially concurring).

¶ 51    Defendant asserts that *Reed*'s "clear and convincing" standard would not be appropriate at the leave-to-file stage because "determinations as to the reliability of the evidence can only be made at the third stage evidentiary hearing" and thus, the standard set forth in *Robinson* should be applied in this context of guilty plea petitioners at the leave-to-file stage. Conversely, the State contends that the standard for guilty plea petitioners should be more stringent at the leave-to-file stage than the standard set forth in *Robinson*. Notably, the State does not offer a definitive standard for this court to apply and ultimately analyzes and rejects defendant's actual innocence claim under the *Robinson* standard.

¶ 52    In this appeal, we are presented with a guilty plea petitioner whose petition was denied at the leave-to-file stage, rather than, like in *Reed*, after a third stage evidentiary hearing. Thus, we believe that the standard set forth by our supreme court in *Robinson*, at the leave to file stage, regardless of whether the underlying judgment was based on a guilty plea or a trial, is most appropriate. Contrary to the State's argument, we do not believe that following *Robinson* at this stage runs counter to the court's pronouncement in *Reed* to subject guilty plea petitioners to a more stringent standard. To receive relief, *i.e.*, vacating a defendant's conviction and allowing the opportunity for a trial, petitioners must still satisfy the clear and convincing standard with evidence adjudged reliable following an evidentiary hearing if the petition reaches the third stage under the Act. The high hurdle espoused in *Reed* ultimately remains in place for guilty plea petitioners. Moreover, the supreme court's express acknowledgement that the reliability of evidence can only

be determined, and thus clear and convincing, after an evidentiary hearing implies that *Reed*'s higher standard would only be employed at the third stage, and additionally suggests that the court considered the earlier stages of postconviction proceedings and intentionally abstained from announcing a separate standard for those stages. For these reasons, we find that the supreme court in *Reed* did not supplant the *Robinson* standard in evaluating petitions at the leave-to-file stage and thus, we apply the *Robinson* standard here.

¶ 53    We reject the State's reliance on *People v. Patel*, 2021 IL App (3d) 170337, and *People v. Rocha*, 2021 IL App (1st) 191714-U, for support of its argument that the standard espoused in *Reed* should apply here. Again, unlike the case before us, *Reed* was decided in the context of a third stage evidentiary hearing. Further, although both *Patel* and *Rocha* were decided in the wake of *Reed* and involved guilty plea petitioners, both involved petitions pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). In *Patel*, the Third District found that the defendant could raise a claim of actual innocence based on newly discovered evidence despite his guilty plea, determined that the defendant's evidence was newly discovered, and remanded to the circuit court to consider whether the new evidence presented was material, noncumulative, and clearly and convincingly demonstrated that a trial would probably result in acquittal. *Patel*, 2021 IL App (3d) 170337, ¶¶ 18-22. In *Rocha*, this court found that the defendant's section 2-1401 petition was untimely and, even if it were not, the defendant's actual innocence claim, properly raised notwithstanding his guilty plea based on *Reed*, was without merit because the supporting evidence was not newly discovered. *Rocha*, 2021 IL App (1st) 191714-U, ¶¶ 30-31, 43-44.

¶ 54    In both cases, the court applied the *Reed* standard, concluding that the defendant must provide " 'new, material, noncumulative evidence that clearly and convincingly demonstrates that

a trial would probably result in acquittal.' " *Patel*, 2021 IL App (3d) 170337, ¶ 19 (quoting *Reed*, 2020 IL 124940, ¶ 49); *Rocha*, 2021 IL App (1st) 191714-U, ¶ 42 (quoting *Reed*, 2020 IL 124940, ¶ 49). However, because both cases arose in the context of section 2-1401 petitions, which do not have multiple stages of proceedings, neither case addressed that *Reed* involved a third stage postconviction petition or analyzed whether there should be a different standard for successive postconviction petitions at the leave-to-file stage. As such, we find neither case to be instructive or to have any bearing on our conclusion.

¶ 55       Accordingly, we summarize the appropriate standard to be applied in the case before us as follows. The appropriate elements for actual innocence claims are that the evidence be (1) newly discovered, (2) material, (3) noncumulative, and (4) of such conclusive character that it would probably change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47. Again, petitions at the leave-to-file stage should only be denied if they have not set forth a colorable claim of actual innocence, meaning that "the petitioner's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence." *Id.* ¶ 44 (citing *Sanders*, 2016 IL 118123, ¶ 24, citing *People v. Edwards*, 2012 IL 111711, ¶ 24). Further, we must take all well-pled allegations that are not affirmatively rebutted by the record as true, and we cannot make credibility determinations at this stage. *Id.* ¶ 45. Lastly, in accordance with *Reed*, we make no determination regarding the reliability of defendant's evidence, which can only be determined should the petition advance to the third stage under the Act, where an evidentiary hearing is held. See *Reed*, 2020 IL 124940, ¶ 50 n.2.

¶ 56                                  4. Defendant's Petition

¶ 57       Having determined the appropriate standard, we now turn to the merits of defendant's actual innocence claim. Here, defendant supported his claim with affidavits from Moore and

Myles. Moore's affidavit provided his witness account of the shooting, stating that he observed Butler walking toward a group of individuals with a gun, heard several gunshots, and then saw Butler run away with a gun. Myles's affidavit provided an account of a conversation he had with McWilliams, who stated that he, Barnes, and Harmon falsely identified defendant as the shooter to avoid police interference with their drug business and that he knew Houston owed Butler money. McWilliams also described the shooter as light-skinned with braids, which is not an accurate description of defendant, who is dark-skinned with dreadlocks.

¶ 58    The State concedes, and we agree, that the affidavits constitute new, material, and noncumulative evidence. Although we are not applying the higher third stage evidentiary standard set forth in *Reed*, we do believe that its statement as to what constitutes "new" evidence in the context of a guilty plea is nonetheless relevant where a trial has not occurred. The *Reed* court clarified that "new" evidence means that the "evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence." *Id.* ¶ 49. Defendant could not have discovered the information contained in either Moore's or Myles's affidavits earlier through due diligence. He did not come into contact with either individual until after he was sentenced and entered prison. Next, the evidence is clearly material where it goes to the identity of the shooter, suggests that the State's witnesses falsely identified defendant as the shooter, and includes a motive for the witnesses in lying about their identification of defendant as the shooter. Finally, the evidence is noncumulative where the State's factual basis did not contain any witness who identified an individual other than defendant as the shooter.

¶ 59    For the final element for actual innocence claims, we must determine whether the supporting documentation is of such conclusive character that a trial would probably result in acquittal. The conclusiveness element is the most important for an actual innocence claim.

*Robinson*, 2020 IL 123849, ¶ 47. Conclusive evidence "refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* "The new evidence need not be entirely dispositive to be likely" to result in acquittal. *Id.* ¶ 48. Significantly, here, we do not have trial evidence before us; instead, we have the State's factual basis for the plea, which "is held to a less stringent level of proof" than at trial." *Reed*, 2020 IL 124940, ¶ 34.

¶ 60    Defendant's newly discovered evidence identified Butler as the actual shooter based on Moore's alleged eyewitness account. Moore averred that he "witnessed the murder of [Williams] and the shooting of [Houston]." In particular, he identified Butler in the vicinity before and after the shooting with a gun, and he heard gunshots. The State contends that Moore's affidavit does not contain specific factual assertions that he actually saw the shootings. Whether Moore actually saw Butler shoot the victims or merely saw Butler before and after the shooting can be parsed out at an evidentiary hearing, should this claim proceed to that stage. Additionally, Moore's account is bolstered by Myles's conversation with McWilliams that provided a potential motive, *i.e.*, money, for Butler shooting Houston and that described the actual shooter as light-skinned with braids, as opposed to dark-skinned with dreadlocks, as is defendant.

¶ 61    Additionally, the information in Myles's affidavit undermines the veracity of Harmon's and Barnes's grand jury testimony and Harmon's statement to the police, where, according to Myles, McWilliams admitted to making false accounts to the police regarding defendant being the shooter in order to protect their drug business.[4] We recognize that none of the new evidence directly compromises Houston's or Battle's identification of defendant or defendant's alleged

---

[4]Notably, the Illinois Rules of Evidence do not apply to postconviction proceedings. Ill. R. Evid. 1101(b)(3) (eff. Sept. 17, 2019); *People v. Shaw*, 2019 IL App (1st) 152994, ¶ 67. Thus, the contents of Myles's affidavit are not barred by the hearsay rule.

confession to Winters via telephone. However, the allegation that Houston owed Butler money could have an effect on Houston's credibility as a witness, if it is determined that he refrained from identifying Butler as the shooter. Additionally, we cannot afford Houston's testimony any greater weight than the other witnesses at this stage. "Without engaging in any credibility determinations, there is no way for this court—or any court—to assess the reliability of those affidavits or the veracity of their assertions." *Robinson*, 2020 IL 123849, ¶ 83. Ultimately, the State's factual basis undergirding the court's acceptance of defendant's guilty plea is directly contradicted by the information in the affidavits, and the affidavits provide evidence that defendant was not the shooter and was actually innocent of the crimes.

¶ 62    Significantly, none of this newly discovered evidence can be said to be positively rebutted by the record. As the supreme court stated in *Robinson*, new evidence is only rebutted where it is "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id.* ¶ 60. The State, for the plea's factual basis, did not present any surveillance footage or any other video evidence of the shooting. Likewise, there is no suggestion of any forensic evidence, such as fingerprints, DNA, or ballistics, to connect defendant to the shooting. The totality of the factual basis relied on witness statements and grand jury testimony.[5] As such, the conflicting new evidence cannot be "affirmatively and incontestably demonstrated to be false or impossible." *Id.*

¶ 63    Additionally, we note that, although the record contains an incriminating statement to the police from defendant, this was not introduced as part of the factual basis. However, in determining whether there is sufficient factual basis for a defendant's plea, the trial court may consider the

---

[5]Again, we note that the grand jury transcripts were not included in the record on appeal.

entirety of the record. See *People v. Banks*, 213 Ill. App. 3d 205, 211 (1991) (the trial court may look anywhere in the record to find a sufficient factual basis for the plea); *People v. Allen*, 323 Ill. App. 3d 312, 317 (2001) (same). Because defendant's inculpatory statement is part of the record, we deem it appropriate to at least consider it here. See *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (a confession may be the " 'most probative and damaging evidence that can be admitted' " against a defendant (quoting *Bruton v. United States*, 391 U.S. 123, 139 (1968) (White, J., dissenting))).

¶ 64    In his December 2009 statement to police, defendant admitted that he fired multiple shots at Williams and Houston and, specifically, that he was trying to send Williams a message after she had previously stabbed him. We acknowledge that defendant's confessed motive for shooting at Williams is corroborated by Harmon's statement that defendant told him prior to the shooting that she had stabbed him in the past. However, we also note that defendant has maintained in both of his postconviction petitions that his confession to the police was involuntary and was coerced. Admittedly, defendant's incriminating statement to Winters, which was included in the State's factual basis, coupled with his confession to the police, weighs toward his guilt. However, the *Robinson* court has specifically rejected the requirement that the newly discovered evidence demonstrate "total vindication" or "exoneration" of the defendant, and again, we cannot weigh the evidence at this stage. *Robinson*, 2020 IL 123849, ¶¶ 55-56. Moreover, it remains true that there is no forensic evidence tying defendant to the crime, two of the four eyewitness accounts are directly impeached with the newly discovered evidence, and defendant has maintained that his confession to the police was involuntary. On this record, we find that the information in the affidavits places the inculpatory evidence in the record and in the factual basis in a different light and undermines this court's confidence in the judgment of guilt. See *id.* ¶ 56.

¶ 65    Defendant's newly discovered evidence directly contradicts the State's evidence in multiple ways, raises questions regarding the veracity of the State's witnesses, and creates a credibility contest that can only be resolved after further proceedings before a factfinder, which this court is not. At this stage, taking as true the well-pled allegations in the affidavits, the exculpatory nature of the evidence alongside the impeachment evidence "raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence." *Id.* ¶ 44 (citing *Sanders*, 2016 IL 118123, ¶ 24, citing *Edwards*, 2012 IL 111711, ¶ 24). Accordingly, we find that defendant has set forth a colorable claim of actual innocence based on the affidavits of Moore and Myles and the trial court incorrectly denied defendant's request for leave to file his successive postconviction petition.

¶ 66    Because we have determined that defendant has presented a colorable claim of actual innocence, we must remand the petition in its entirety and therefore need not review his ineffective assistance of counsel claim. See *People v. Cathey*, 2012 IL 111746, ¶ 34 (stating that, because partial summary dismissals are not permitted under the Act, the entire petition must be remanded for further proceedings where one claim has merit). Finally, nothing in this order should be construed as suggesting that any of the claims in defendant's petition would pass second stage muster.

¶ 67                                    III. CONCLUSION

¶ 68    For the reasons stated, we reverse the judgment of the circuit court and remand for further proceedings under the Act.

¶ 69    Reversed and remanded.

---

## No. 1-19-1101-B

---

| | |
|---|---|
| **Cite as:** | *People v. Griffin*, 2022 IL App (1st) 191101 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-CR-1910; the Hon. Michael B. McHale, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Rachel M. Kindstrand, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |

---